## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 20-20021-JAR |
| MANUEL MEDINA-RODRIGUEZ, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter is before the Court on *pro se* Defendant Manuel Medina-Rodriguez's Consolidated Motion for Judicial Relief (Doc. 42), in which he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), reduction in sentence under 18 U.S.C. § 3582(c)(2), and appointment of counsel. The Government opposes the motion. As described more fully below, the Court denies Defendant's motion for compassionate release, his motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), and his motion for appointment of counsel.

## I.    Background

On March 11, 2020, Defendant was charged in an Indictment with six counts of distribution of methamphetamine and three counts of distribution of heroin.[1] On September 13, 2021, Defendant entered a guilty plea to Count Two of the Indictment, charging violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B), distribution of five grams or more of methamphetamine.[2] Neither party objected to the Presentence Investigation Report.[3]

---

[1] Doc. 1.

[2] Docs. 21–23.

[3] Doc. 24 at 17.

Defendant was held responsible for 1.11 kilograms of "ice" and 78.37 grams of heroin, establishing a base offense level of 34.[4]  Two levels were added for importation.[5]  Two levels were subtracted as Defendant was safety valve eligible; and three levels were subtracted for acceptance of responsibility.[6]  Therefore, Defendant's total offense level was 31.[7]  Defendant had a criminal history score of zero, and thus a Criminal History Category of I, rendering a sentencing guideline range of 108 to 135 months.[8]  On October 27, 2022, the Court imposed a sentence of 90 months' imprisonment, after applying a variance under 18 U.S.C. § 3553(a).[9]

Defendant is currently incarcerated at Oakdale II FCI, with a projected release date of January 31, 2028.

## II.     Discussion

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.'  One such exception is contained in § 3582(c)(1)."[10]  Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[11] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

---

[4] *Id*. at 8.

[5] *Id.*

[6] *Id*. 8–9.

[7] *Id*. at 9.

[8] *Id*. at 13.

[9] Doc. 37–38.

[10] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (citations omitted) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[11] Pub. L. No. 115-391, 132 Stat. 5194.

Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[12]  The Court may deny a § 3582(c)(1)(A) motion "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[13]  If the Court grants the motion, however, it must address all three steps.[14]

### A. Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the Government invokes it.[15]  Here, the Government concedes that Defendant has properly exhausted his claim.  The Court thus proceeds to the merits.

### B.  Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion.  The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[16]  That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[17]  Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to

---

[12] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[13] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[14] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[15] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[16] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[17] *Id.*

§ 3582(c)(1)(A) motions filed by a defendant.[18]  Thus, § 3582(c)(1)(A)'s consistency

requirement did not constrain the Court's discretion to consider whether extraordinary and

compelling reasons warranted a sentence reduction.[19]

On November 1, 2023, a new Sentencing Commission policy statement became effective

that is "plainly applicable to motions for sentence reduction filed by either the Director of the

Bureau of Prisons or a defendant."[20]  The policy statement lists grounds that constitute

extraordinary and compelling circumstances and provides additional guidance for courts.  The

listed grounds are medical circumstances, age, family circumstances, whether the defendant was

a victim of abuse while in custody, "other reasons," and whether the defendant served an

"unusually long sentence" where there has been a change in law.[21]  The Sentencing Commission

"considered but specifically rejected a requirement that 'other reasons' be similar in nature and

consequence to the specified reasons."[22]  Rather, the catch-all provision allows the Court to

consider any circumstances which are similar "in gravity" to the listed categories.[23]

Defendant offers the following as extraordinary and compelling reasons justifying his

compassionate release in this case: (1) the disparity between actual methamphetamine and

methamphetamine mixture, (2) he should be given good-time credit despite his ineligibility as an

undocumented alien, and (3) he is a zero-point offender eligible for relief under Amendment 821.

---

[18] *See id.*

[19] *Id.* at 836–37.

[20] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

[21] U.S.S.G. § 1B1.13(b).

[22] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207.

[23] *Id.*; U.S.S.G. § 1B1.13(b)(5).

### 1.  Methamphetamine Disparity

Defendant offers as an extraordinary and compelling reason for relief that he was sentenced based upon a calculation of "ice" amounts, rather than methamphetamine mixture, receiving a harsher sentence than he would likely receive today if the Court calculated his sentence as a methamphetamine mixture.  Defendant was found culpable for distributing 1.11 kilograms of "ice" 78.37 grams of heroin.  Defendant distributed these amounts in the course of eight controlled buys by a confidential informant, four buys in 2017 and four buys in 2019. Defendant's base offense level of 34 was based on a converted drug weight of 22,278.37 kilograms.

To be sure, there is a disparity when one calculates methamphetamine as "ice" rather than as a methamphetamine mixture.  The Government concedes that in this case had the Court calculated the 1.11 kilograms as a methamphetamine mixture, the converted drug weight would have been 2,278.37 kilograms resulting in a base offense level of 30.

While the Court rejects any suggestion that the disparity in the calculation of actual methamphetamine versus methamphetamine mixture is alone a sufficient reason to grant relief, the disparity in some circumstances may be a relevant consideration.  This is *not* such a circumstance.  Courts that have articulated a policy disagreement with the disparity in actual methamphetamine versus methamphetamine mixture have noted several concerns.  First the 10-to-1 disparity is neither based on science or empirical evidence.[24]

Second, there may be too much emphasis placed on the purity of methamphetamine, which does not always correlate with a defendant's culpability or level in the hierarchy of a drug

---

[24] *See, e.g.*, the well-reasoned opinion of Judge Brack in *United States v. Ibarra-Sandoval*, 265 F.Supp. 3d 1249, 1252–58 (D.N.M. 2017).

trafficking organization.  For example, someone may have a minimal role in the drug trafficking organization, acting as a mule on one occasion, transporting pure methamphetamine.  In that instance, calculating the methamphetamine as ice *may* constitute an extraordinary and compelling circumstance.

Even more compelling may be a situation where the defendant possesses or distributes methamphetamine of low purity, yet the guideline range is based on calculating the actual amount of methamphetamine, rather than a methamphetamine mixture.  In *United States v. Sands,*[25] this Court found such an extraordinary and compelling circumstance where the defendant was distributing methamphetamine amounts that ranged from 28% to 56% purity, yet the sentence was based on calculation of actual methamphetamine.  The calculation disparity was compounded by the fact that some of the amounts calculated were based on estimates of amount and purity of drugs in historical transactions defendant admitted to law enforcement.  Based on that and based on this Court's finding that these relatively low levels of methamphetamine purity indicated the defendant was nowhere near the top hierarchy of the drug trafficking organization, the Court found an extraordinary and compelling reason to grant relief.

But the Court does not find an extraordinary and compelling reason to grant Defendant relief based on this disparity in this case.  Here, Defendant distributed heroin in two controlled buys in 2019, and distributed methamphetamine in four controlled buys in 2017 and two controlled buys in 2019.  Notably, the methamphetamine was 100% pure in three of the 2017 controlled buys and 99.7% pure in the fourth 2017 buy.  And the methamphetamine in the two 2019 buys was 100% and 97% pure.  Defendant consistently distributed methamphetamine that was pure or almost pure.  All of these transactions involved methamphetamine that was

---

[25] 2025 WL 252929 (D.Kan. January 21, 2025).

appreciably purer than the 80% purity level that is considered "ice" methamphetamine under the Sentencing Guidelines.[26]  Under these circumstances, the Court concludes that calculating the methamphetamine as ice methamphetamine was appropriate; indeed in four of the six controlled buys of methamphetamine, it was not a mixture, it was pure methamphetamine.

### 2.  Not receiving good-time credit

Defendant further argues that his status as a deportable alien has precluded him from receiving good-time credit otherwise offered by the Bureau of Prisons ("BOP").  This is does not constitute an extraordinary and compelling reason for compassionate release.[27]  This is based on BOP regulations and is not disparate treatment nor unique with respect to deportable aliens. Furthermore, as the Government posits, claims affecting the duration of a prisoner's custody must be raised in a Section 2241 application, and jurisdiction over such claims lies only in the district where the prisoner is confined.[28]  Defendant is confined in Oakdale II FCI, which is located in the Western District of Louisiana.  Because he is not confined in the District of Kansas, this Court lacks jurisdiction of this claim and thus summarily denies it.

### 3.  Amendment 821

Defendant also seeks relief under Amendment 821.  "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to

---

[26] *See* U.S.S.G. § 2D1.1(c), Note (C).

[27] *See United States v. Urias-Avilez*, No. 15-10152-1-JWB, 2022 WL 1754090, at *2 n.4 (D. Kan. May 31, 2022) (noting that the Court would otherwise reject the defendant's claim that the defendant's status as a deportable alien is likely to cause an increase in the severity of his sentence as this is not an extraordinary and compelling circumstance); *United States v. Galaviz*, No. 12-cr-125-19 (CKK), 2023 WL 8170998, at *4 (D.D.C. Nov. 24, 2023) (being categorically excluded, as a deportable alien, from early release is not an extraordinary and compelling circumstance); *United States v. Santillan*, No. 5:18-CR-00048-KDB-DSC-14, 2023 WL 4002526, at *2 (W.D.N.C. June 14, 2023) (being excluded, as a deportable alien, from programming, good time credits, halfway house placement, and home confinement is not an extraordinary and compelling circumstance).

[28] *See United States v. Mobarekeh*, 707 F. App'x 561, 562 (10th Cir. 2017) (citing *Hale v. Fox*, 829 F.3d 1162, 1165 n.2 (10th Cir. 2016)).

statutory authorization."[29]  Section 3582 allows for a possible sentence reduction for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."[30]

Additionally, the Sentencing Commission amended the United States Sentencing Guidelines effective November 1, 2023.[31]  Part A of Amendment 821 limits the criminal history impact of "status points," and Subpart 1 of Part B of Amendment 821 creates a new guideline, § 4C1.1, that provides for a decrease of two offense levels for "Zero-Point Offenders."[32]  With respect to the guideline for Zero-Point Offenders, a defendant is eligible for a two-level reduction in his offense level if he or she meets all the following criteria:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 . . . ."[33]

---

[29] *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997).

[30] *See* 18 U.S.C. § 3582(c)(2).

[31] U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2023).

[32] U.S. Sent'g Guidelines Manual app. C Supp., amend. 821 (U.S. Sent'g Comm'n 2023).

[33] *See* U.S.S.G. § 4C1.1(a).

The Government concedes that Defendant is a zero-point offender. Defendant's guideline range was 108 to 135 months, based on a Total Offense Level 31 and Criminal History Category I. As a zero-point offender, he is eligible for a two-level reduction to a Total Offense Level 29, Criminal History Category I. This renders a sentencing range of 87 to 108 months. This Court sentenced Defendant to 90 months, below his then guideline range of 108 to 135 months and near the low end of the 87 to 108-month range he would receive as a zero-point offender.

While the Court would be within its authority to reduce Defendant's sentence to 87 months, the minimum amended guideline range, under Amendment 821 and its policy statement, the Court cannot reduce the term of imprisonment to below the minimum 87 months. The Guidelines state that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range."[34] The Government urges the Court to not reduce Defendant's sentence any further, as any further reduction would not be consistent with the factors under Section 3553(a).

## C. Section 3553 Factors

Since Defendant has established an extraordinary and compelling reason for relief, as a zero-point offender, the Court must still consider whether release or a reduction in sentence is warranted under the § 3553(a) factors. The Court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for a sentence to reflect the seriousness of the offense, deter future crime, protect the public, and effectively provide the defendant with treatment, (3) the kinds of sentences available, (4) the

---

[34] U.S.S.G. § 1B1.10(b)(2)(A).

kinds of sentence and the sentencing range established for the offense at the time of sentencing, (5) certain policy statements issued by the Sentencing Commission, (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (7) the need for victim restitution.[35]

Defendant offers that he is working in prison and has an excellent record of conduct in prison. But the other § 3553 factors weigh against compassionate release or a reduction in sentence. The offense was serious. Defendant sold methamphetamine on six occasions and heroin on two occasions. He sold methamphetamine that was pure or almost pure. He negotiated larger sales of heroin and sales of cocaine that did not reach fruition and told the informant that he planned to receive shipments of cocaine in quantities of multiple kilograms. Defendant spoke of having multiple sources of supply. None of these additional amounts Defendant spoke about were included in the calculation of drug amounts attributable to him. The sentence Defendant received, 90 months, was below the original guideline range and still near the low end of the guideline range when adjusted for his status as a zero-point offender. His sentence is appropriate when considering the need to provide a sentence that deters, justly punishes, and protects the community from further crime.

## III.    Motion for Appointment of Counsel

Finally, Defendant seeks appointment of counsel to assist him in preparing and filing this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and for reduction in sentence under . The Court denies the motion. There is no constitutional right to counsel after direct appeal.[36] Moreover, Defendant's motion demonstrates that he is quite capable of preparing and

---

[35] 18 U.S.C. § 3553(a).

[36] *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).

filing the instant motion, in which he raises substantive grounds for relief, relying upon legal authority and citing to the lengthy procedural record in this case.[37]   Defendant bears the burden to convince this Court to appoint counsel,[38] and he has fallen short of that obligation; consequently, his motion to appoint counsel must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Manuel Medina-Rodriguez's Consolidated Motion for Judicial Relief (Doc. 42), seeking compassionate release, reduction in sentence, and appointment of counsel is **denied**.

**IT IS SO ORDERED.**

Dated: April 15, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[37] *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (In determining whether to appoint counsel, a district court generally weighs several factors, including: (1) the merits of the defendant's claims, (2) the nature of the factual issues raised, (3) the defendant's ability to argue his claims independent of counsel's assistance, and (4) the complexity of the arguments raised).

[38] *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).